LORETTA KERKOS, PLAINTIFF-RESPONDENT, v. JOSEPH KERKOS, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 8, 1951—Decided October 24, 1951.

Before Judges Jacobs, Eastwood and Bigelow.

*Mr. Charles S. Joelson* argued the cause for the plaintiff-respondent.

*Mr. Peter Cohn* argued the cause for the defendant-appellant (*Mr. Hymen D. Goldberg*, attorney).

The opinion of the court was delivered by

EASTWOOD, J. A. D.   The defendant, Joseph Kerkos, appeals from an order of the Superior Court, Chancery Division, adjudging him in contempt for failure to comply with an order for support *pendente lite.*

The plaintiff, Loretta Kerkos, filed her complaint seeking an absolute divorce on the ground of extreme cruelty.   On September 16, 1949, after service upon the defendant of a notice of motion and accompanying affidavit and the taking of testimony at the return day before the advisory master, an order for alimony *pendente lite* was advised and filed.   On October 24, 1949, under the authority of *Rule* 3 :84–4, the plaintiff filed an amended complaint changing the action from absolute divorce to separate maintenance.   Complying with the order for temporary support the defendant made payments until December 15, 1950.   On February 10, 1950, the plaintiff moved to increase the amount of support *pendente lite* and the defendant made a cross-motion to decrease the amount thereof.   On February 21, 1950, the advisory master advised an order denying both applications and an order to that effect was accordingly entered.   On January 26, 1951, being the return day of the plaintiff's notice of motion to adjudge the defendant in contempt for failure to make payment of the alimony *pendente lite,* the defendant conceding that no payment of temporary support had been made for six weeks prior thereto, the court adjudged the defendant in contempt, but directed that the warrant for commitment should not issue for the period of one week.   On February 2, 1951, payment not having been made, a warrant of commitment was issued and the defendant, upon service thereof by the sheriff, paid the arrearages, counsel fee, taxed costs and

a fine of $10 to the State of New Jersey. At the argument of this appeal, it was conceded that the Chancery Division, following final hearing upon the principal issue, has found in favor of the plaintiff for separate maintenance under her amended bill of complaint.

The defendant contends (1) that a contempt proceeding in a matrimonial action cannot be instituted by a notice of motion, and the trial court was, therefore, without jurisdiction; (2) that the order of September 16, 1949, for alimony *pendente lite* became inoperative on December 20, 1950, when the cause of action for divorce was dismissed and the defendant could not be charged with violating. it thereafter; (3) that the order of September 16, 1949, was improvidently granted and, therefore, cannot be the basis of a contempt proceeding; and (4) that the order adjudging defendant in contempt fails to comply with legal requirements and is fatally defective.

Under the circumstances here, the defendant's contention that the court was without jurisdiction to make the order of January 26, 1951, adjudging the defendant guilty of contempt because the application was made by notice of motion and not by order to show cause, is without merit. The contempt charged against the defendant and of which he stands convicted is a private or civil contempt and of the type of omission and not commission. Public contempts "are primarily concerned with a violation of the rights of the public as represented by constituted legal tribunals, are, therefore, criminal in nature and are attended by a degree of formality and preciseness beyond the required procedure in private contempts, which are primarily for the vindication of private rights and only incidentally involve a vindication of public authority." *Nussbaum v. Hetzer,* 1 *N. J.* 171, 174 (1948). The defendant contends that under the rules ·and the accepted practice, the contempt proceeding should have been initiated by an order to show cause supported by a petition and affidavits and that the failure to follow that procedure deprived the advisory master of jurisdiction to hear the

application, relying upon *Nussbaum v. Hetzer, supra,* where it is stated at *page* 174:

"\* \* \* and the procedure by order to show cause, supported by petition and affidavits, responded to by answer containing certain admissions, followed by argument, was in accordance with the recognized practice."

In matrimonial causes the procedure to hold a person in contempt for failure to comply with the provisions of any order or judgment shall be in accordance with *Rules* 3:80–2 and 3:87–3. *Herr on Marriage, Divorce and Separation,* 12 *N. J. Practice, sec.* 1704, *pp.* 288, 289. *Rule* 3:80–2, as amended November 10, 1949, provides, *inter alia*:

"Every other contempt, whether of a criminal or civil nature, shall be prosecuted on notice, and if it occurs in an action, it shall be prosecuted in the action in which it occurs. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense and shall state the essential facts constituting the contempt charged. Whether the contempt charged is criminal or civil in nature, the notice may be given by an order to show cause; and the person charged with contempt may, not later than 1 day before the return day of such an order, or within such time as the court may allow, serve an answer or an answering affidavit, or he may plead orally at the hearing. In any cause in which the court determines that the contempt charged may be criminal in nature,

(a) the notice may be given orally by the judge in open court in the presence of the·person charged with contempt or by an order of arrest, or, as stated, by an order to show cause. \* \* \*"

*Rule* 3:87–3 provides:

"All applications to hold a person in contempt for failure to comply with the provisions of any order of judgment in a matrimonial cause shall be made in accordance with Rule 3:80–2."

It would seem from the language employed in the rule that the institution of a contempt proceeding in a matrimonial case by order to show cause is not mandatory. It is significant that the rule provides that it "shall be prosecuted on notice"; that "the notice shall state the time and place of

hearing," etc., and that "the notice may be given by an order to show cause." However, we are of the opinion that the preferable procedure is by order to show cause and it appears to have been the more settled form of procedure in such cases. The defendant here was not harmed or prejudiced by reason of the fact that the application was by notice rather than by order to show cause, as the notice specifically set forth the "time and place of hearing, allowing a reasonable time for the preparation of the defense" and stating "the essential facts constituting the contempt charged." The defendant participated fully in the hearing and the record is barren of any objection made by him to the procedure adopted by the plaintiff, the only contention being that set forth in his opposing affidavit, *viz.*: "On December 20, 1950, the above action was dismissed with the consent of the plaintiff in order that she might proceed in a separate maintenance action against me." Not having raised the procedural question below the defendant is precluded from doing so on appeal. *Schwartz v. Rothman*, 1 *N. J.* 206 (1948).

■■ As to defendant's second ground of appeal, that the order of September 16, 1949, is inoperative because of the alleged dismissal of the plaintiff's complaint for absolute divorce, again we think the contention is unsubstantial. The defendant relies upon the comment of the advisory master at a hearing held before him on December 20, 1950, at which time plaintiff's counsel, upon inquiry by the advisory master, stated that the plaintiff was relying upon the amended complaint setting up an action for separate maintenance and the advisory master thereupon stated: "Very well, the original complaint will be dismissed." The cases cited by the defendant in support of this contention all deal with situations where a judgment of dismissal or terminating the litigation had been formally entered so that the court was, of course, without jurisdiction to render any further or subsequent determination therein, unless the judgment of dismissal or nonsuit were vacated and the case reinstated. That is not the situation here. The original bill of com-

plaint was not dismissed, but was merely amended in conformity with *Rule* 3 :84–4, which provides :

"(a) In any action for divorce, nullity of marriage, or separate maintenance, an amendment to the complaint or counterclaim may be allowed to set forth a cause of action which has arisen or become known since the filing of the original complaint, or to change the action from separate maintenance, absolute divorce or divorce from bed and board to any other one of said actions."

*Rule* 3 :15–3 provides :

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading ; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading."

The record reveals that no order of dismissal was ever actually entered. Undoubtedly, the statement made by the advisory master did not nor could not have the effect of an order of dismissal, nor do we believe it was so intended by the advisory master. As a matter of fact, the advisory master did not have the final authority to make an order of dismissal, his authority being merely that of an advisory nature. The authority of the master is set forth in *Traudt v. Traudt,* 116 *N. J. Eq.* 75, 78, 79 (*E. & A.* 1934), wherein Mr. Justice Case, speaking for the court, stated :

"Either recognizing or supplementing the inherent authority of the chancellor to make references to masters, the Legislature provided in section 104 of the 1902 Chancery Act (1 *Comp. Stat. p.* 449) :

'The chancellor may refer to any master in chancery * * * any cause or other matter which, at any time, may be pending in the court of chancery, to hear the same for the chancellor, and to report thereon to him, and advise what order or decree should be made therein,'

And further in section 107 of the same statute :

'It shall be lawful for the chancellor, by rule of court, to fix and determine to what masters the references provided for by this

act shall be made  \*  \*  \*  and the chancellor may make all such general rules for the effectual execution of this act as he shall deem necessary and proper.'

On April 1, 1933, the chancellor made a general rule reading in part as follows:

'In matrimonial causes, applications for orders or decrees (excepting orders of publication and orders of reference, which shall be made to one of the advisory masters in Trenton),  \*  \*  \*  may be made to an advisory master in his respective district, and such applications are hereby referred to such advisory master, to hear and advise orders or decrees without special order of reference; and in all matrimonial causes, whether litigated or unlitigated, the order of reference shall be made to one of the advisory masters unless otherwise ordered by the chancellor to hear the same for the chancellor and report thereon to him and advise what orders or decrees should be made therein.' "

See also *In re Caruba*, 139 *N. J. Eq.* 404 (*Ch.* 1947) ; affirmed, 140 *N. J. Eq.* 563 (*E. & A.* 1947) ; *R. S.* 2 :2–14, as amended, *L.* 1941, *c.* 307, *p.* 827, *sec.* 1. As to the authority of advisory masters to hear matrimonial causes under our present judicial system, see 1947 *Constitution, Art. XI, sec. IV, par.* 6, *R. S.* 2 :1A–4, *L.* 1948, *c.* 382, *sec.* 2 ; *R. S.* 2 :50–1 *et seq., L.* 1948, *sec.* 1 *et seq.*; *Rule* 3 :87–4

Thirdly, we find no merit in defendant's contention that the original order for temporary support was improvidently granted, on the ground that the plaintiff failed to prove not only her need but also her cause of action and each essential element thereof The rule stated is not disputed. See *Earl v. Earl,* 79 *N. J. Eq.* 517 (*Ch.* 1911) ; *Herr on Marriage, Divorce and Separation,* 10 *N. J. Practice, sec.* 369, *p.* 356. The supporting affidavit of the plaintiff asserted in detail defendant's alleged acts of cruelty. It is significant that the defendant's answering affidavit did not attempt to controvert any of the plaintiff's allegations of cruelty. In addition, testimony was taken at the hearing before the advisory master and the order advised by him and entered by the court clearly indicates that there was proof before him to satisfy the requirements of the rule, the order reciting: "\*  \*  \*  after due notice having been given and it appearing from the affidavits filed therein together with testimony

taken in open court that there is good cause for the entry of this order." We must assume, therefore, in the absence of any contrary proofs in the record that there was submitted to the court satisfactory proofs establishing the plaintiff's cause of action sufficiently to warrant the order for support. See also, *Herr on Marriage, Divorce and Separation*, 10 *N. J. Practice, sec.* 362, *p.* 347; *sec.* 369, *p.* 355; *Forrest v. Price*, 52 *N. J. Eq.* 16 (*Ch.* 1893). Since the bill of complaint disclosed a cause of action cognizable before the Chancery Division, the allowance of *pendente lite* support in a matrimonial cause is within the sound discretion of the court. *Lasasso v. Lasasso*, 1 *N. J.* 324 (1949); *Shaffer v. Shaffer*, 129 *N. J. Eq.* 42 (*E. & A.* 1941). Aside from the merits of the legal question which we have been discussing, the defendant made no attempt to appeal from the order in question. Therefore, he cannot now attack the validity of that order in the contempt proceedings. The cases of *Dodd v. Una*, 40 *N. J. Eq.* 672 (*E. & A.* 1885) and *N. J. Annual Conference, etc., v. Lattimore*, 6 *N. J. Super.* 348 (*App. Div.* 1950), are factually not applicable here. The holding in those cases was generally to the effect that if the disobeyed order was one wholly without the jurisdiction of the court which made it so that it was, when made, *coram non judice* and void, such lack of jurisdiction will be fatal to the proceedings for contempt, and that the lack of jurisdiction of the court which made the original order may be reviewed in the contempt proceedings, although no appeal was taken therefrom. However, as we have heretofore stated, the advisory master had unquestioned jurisdiction to hear the application for alimony *pendente lite* and, consequently, no appeal having been taken from that order, the validity thereof cannot now be raised by the defendant. *Forrest v. Price, supra; Oddo v. Saibin*, 106 *N. J. Eq.* 453 (*Ch.* 1930); *Herr on Marriage, Divorce and Separation*, 10 *N. J. Practice, sec.* 394, *p.* 386; *Jackson v. Jackson*, 142 *N. J. Eq.* 712 (*E. & A.* 1948).

As to defendant's fourth contention, we are satisfied that the order sufficiently apprised him in detail the

amount required to be paid for arrearages, counsel fee, taxed costs and fine of $10, if he desired to purge himself of the contempt within one week from the date thereof. It is also clear that the warrant for commitment listed in detail the sums of money required to be paid by the defendant, to wit: arrearages of alimony $360, counsel fee $25, taxed costs $25.80, totalling $410.80, plus a fine of $10 to New Jersey. The only criticism that deserves any comment is that at the time the notice of application to hold the defendant in contempt was served, the arrearages amounted to the sum of $240, whereas the order directed the payment of arrearages in the sum of $360. At the hearing, the defendant did not raise any question as to the amount due, and merely contended that the order for the payment of alimony had terminated by reason of the alleged dismissal of the bill of complaint. The order recites that the amount of arrearages due at the time of the hearing was $360 and the order for payment of that sum was accordingly entered. It is true that the order for adjudging one in contempt and the warrant for commitment must set forth all of the sums to be paid by the defendant so that he may be fully apprised as to the amount that will satisfy the order and if paid, thereby purge him of the contempt. *Jernee v. Jernee,* 54 *N. J. Eq.* 657 (*E. & A.* 1896); *Adams v. Adams,* 80 *N. J. Eq.* 175 (*E. & A.* 1912). See also *Herr on Marriage, Divorce and Separation,* 10 *N. J. Practice, sec.* 392, *p.* 385. We think, under the proofs, that the court was justified in directing the defendant to pay the amount of the arrearages at the time of the hearing. See *Baskinger v. Baskinger,* 129 *N. J. Eq.* 224 (*Ch.* 1941); *Kirchner v. Kirchner,* 5 *N. J. Super.* 341 (*App. Div.* 1949).

At the hearing, the application of the plaintiff for counsel fee was argued. The sum of $250 is allowed as counsel fees, together with taxed costs.

The order of the Chancery Division is affirmed.